**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | Chapter 11 |
| NORTEL NETWORKS INC., et al., | : | |
| | : | |
| Debtors. | : | Case No. 09-10138-KG |
| _____ | : | |
| | : | |
| TRUSTEE OF NORTEL NETWORKS | : | |
| U. K. PENSION PLAN AND BOARD OF | : | |
| THE PENSION PROTECTION FUND, | : | |
| | : | |
| Appellant, | : | |
| | : | |
| v. | : | C. A. No. 10-230-JJF-MPT |
| | : | |
| NORTEL NETWORKS INC., et al., and | : | |
| the COMMITTEE OF UNSECURED | : | |
| CREDITORS, | : | |
| | : | |
| Appellees. | : | |

**REPORT AND RECOMMENDATION**

## I. INTRODUCTION

Presently before the court is an appeal filed by Trustee of Nortel Networks UK

Pension Plan (the "Trustee") and the Board of Pension Protection Fund, (the "PPF")

(collectively "Appellants"), from the United States Bankruptcy Court, District of Delaware

("Bankruptcy Court") February 26, 2010 order enforcing the automatic stay against

certain claimants with respect to the U.K. pension proceedings[1] ("Automatic Stay

Order") and its March 9, 2010 memorandum opinion denying Appellants' motion

seeking relief from the automatic stay (the "Opinion").[2] For the reasons that follow, the

---

[1] Bankr. D.I. 2576.
[2] *In re Nortel Networks Corp.*, 426 B.R. 84 (Bankr. D. Del. 2010).

court recommends the orders of the Bankruptcy Court be affirmed.

## II. BACKGROUND

### The Nortel Networks U.K. Pension Plan

This action arises in connection with the Nortel Networks U.K. Pension Plan (the "Plan"), which is a defined benefit pension plan established and governed by U.K. law, wherein employees of Nortel Networks UK Limited ("NNUK") become entitled to pension benefits on their final salary, with the employer agreeing to meet the balance of the costs providing such pension benefits after taking into account the employees' own contributions.[3]   NNUK is the employer under the Nortel Networks U.K. Pension Plan. The Trustee is the trustee of the Plan, and owes a fiduciary duty to the members of the Plan, which requires that the Trustee act in the best interest of the members and take steps to ensure that the assets of the Plan are sufficient to meet the members' pension entitlements.[4]

### The U.K. Pension Legislative and Regulatory Framework

Appellant Trustee is a private party responsible for administering the Plan and providing benefits to Plan members, who are former employees of NNUK.[5]   Appellant PPF was established under the U.K. Pensions Act 2004 (the "2004 Act").   PPF is a statutory fund established to provide compensation to members of eligible U.K. occupational pension plans where the employer has suffered a qualifying insolvency event and where the plan's assets are insufficient to cover a specified level of

---

[3]  Davies Dec. ¶ 8.
[4]  Hamm Dec. ¶ 44.
[5]  Hitchcock Dec. ¶ 16.

compensation.[6]  Funding for the "safety net" administered by the PPF is derived

principally from a mandatory levy assessed on all eligible plans.  Also part of the 2004

Act was the creation of The Pensions Regulator ("TPR"), which is the governmental

agency charged with the responsibility of regulating the operations and administration of

occupational pension plans in the U.K.[7]

### Financial Support Directions

One of TPR's powers is its ability to issue a Financial Support Direction ("FSD")

to an entity associated with an employer in a underfunded pension plan ("Related

Entity").[8]  An FSD requires the Related Entity to submit a proposal to TPR for its

approval explaining how it intends to provide financial support to eliminate the plan's

funding deficit and ensure that such support remains in place while the plan is in

existence.[9]  An FSD may be issued if certain requirements are met, including (1) the

plan employer is "insufficiently resourced"; (2) the Related Entity is an associate of, or is

connected with, the employer; and (3) issuance of an FSD against the Related Entity is

reasonable in the circumstances.[10]

The decision to issue an FSD is made by the Determinations Panel ("DP"), which

is an independent committee established by TPR consisting of persons with legal,

business and/or pension knowledge and expertise.[11]  In deciding whether it is

reasonable to issue a FSD against a Related Entity, the Determinations Panel must

---

[6]  Favier Dec. ¶¶ 4-6.
[7]  Hitchcock Dec. ¶ 29-30.
[8]  Ham Dec. ¶¶ 7, 30.
[9]  Hitchcock Dec. ¶ 37.2.
[10]  *See* § 43 of the 2004 Act, Ham Dec. Ex. A.
[11]  Ham Dec. ¶¶ 18, 28, 40; Hitchcock Dec. ¶¶ 49, 51-52.

consider all relevant matters, including:  (1) the relationship between the Non-Employer and the Employer, including whether the Non-Employer controlled the Employer; (2) the value of any benefits received directly or indirectly by the Non-Employer; (3) any connection or involvement of the Non-Employer with the pension plan; and (4) the financial circumstances of the Non-Employer.[12]

If the entity has not complied with the FSD, the DP can also issue a non-compliance contribution notice ("CN") so long as TPR believes that it is reasonable to do so.[13]  A CN states that the persons to whom it is issued are under a liability to pay to the trustees of the pension plan the sum specified therein.  The CN may be for all or part of the amount by which the pension plan is under-funded.  This amount is treated as a debt due to the trustees of the pension plan.[14]  While TPR can exercise such powers as the trustee of the pension plan to recover the debt under the CN, during the assessment period, only the PPF may exercise the trustee's rights and powers.[15]

If a party to whom a FSD or CN is issued disputes that issuance, it may make a reference to the TPR Tribunal (the "Tribunal") within 28 days from the date of the issuance.  The Tribunal will decide the appropriate action, if any, to take, including possibly revoking, confirming, or varying the FSD or CN.  After receiving the Tribunal's decision, the party may, with permission of the Tribunal or the U.K. Court of Appeal, appeal on a point of law arising from a decision of the Tribunal.[16]

**Chapter 11 Filings**

---

[12] Hitchcock Dec. ¶ 37.4.
[13] Hitchcock Dec. ¶ 43.
[14] *See* § 49(3) of the 2004 Act.
[15] Hitchcock Dec. ¶¶ 5.5, 46, & Schedule 2.
[16] *See* § 103 of the 2004 Act; Hitchcock Dec. ¶¶ 54-58.

On January 14, 2009 (the "Petition Date"), the debtors in the above-captioned case (the "Debtors")[17] (other than Nortel Networks (CALA) Inc. ("NN CALA") which filed on July 14, 2009) filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, and the Canadian Debtors filed a similar application in Canada.[18]  Also on January 14, 2009, nineteen of the Debtor's European affiliates, including NNUK (collectively, the "EMEA Debtors") were placed into administration by the High Court of Justice of England and Wales.[19]

On September 30, 2009, Appellants jointly filed Proofs of Claim ("Proofs of Claim") against the Debtors based on allegations that:  (1) the NNUK Pension Plan was underfunded by an amount stated to be £2.1 billion or $3.1 billion; and (2) TPR had concluded that NNUK was "insufficiently resourced" on June 30, 2008, and that grounds therefore existed to issue a Warning Notice ("Warning Notice"), instituting the U.K Administrative Proceedings (the "Proceedings") to seek the issuance of an FSD against certain affiliates of NNUK, including Nortel Networks Inc. ("NNI") and NN CALA, to cover the underfunding.[20]

According to the U.K. Pension Claim, by the time it was filed, TPR had concluded that grounds existed to issue certain Warning Notices and to seek a FSD against certain

---

[17]   The debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc, (3546), Architel Systems (U.S.) Coproration (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11epiqsystems.com/nortel.
[18]   D.I. 39 at 4-5.
[19]   *Id.* at 5.
[20]   Hitchcock Dec. ¶¶ 22, 46.

members of the Nortel Group worldwide, including NNI and NN CALA, as companies allegedly "connected with or associates of" NNUK, with respect to the allegations that NNUK was "insufficiently resourced" on June 30, 2008, a date selected by TPR.[21]

On January 11, 2010, TPR issued a Warning Notice against 29 Nortel entities, including two of the Debtors:  NNI and NN CALA.[22]  The Warning Notice provides that TPR believes it to be reasonable to issue an FSD against the these entities ("Targets"), which requires them to provide financial support for the NNUK Pensions Plan in an amount as large as $3.1 billion.

### Debtors' Motion to Enforce the Stay Against the Trustee and PPF

On February 17, 2010, the Canadian Debtors filed an application with the Ontario Superior Court of Justice (the "Canadian Court") seeking to stay the Proceedings on the ground that they violate the stay imposed by the Initial Order issued by the Canadian Court.  That application was heard on February 25, 2010.  The Canadian Court issued the stay on February 26, 2010.

On February 18, 2010, the Debtors filed a motion (the "Stay Motion") pursuant to Sections 362(a)(1) and (a)(6) of the Bankruptcy Code to enforce the automatic stay against Appellants with respect to their participation in the Proceedings as against NNI and NN CALA.  Appellants filed an objection to the Stay Motion on February 24, 2010 (the "Objection").  On February 26, 2010, a hearing occurred before the Bankruptcy Court, after which the Bankruptcy Court granted the Stay Motion and issued the Automatic Stay Order, and subsequently issued the Opinion.

---

[21] *See* Ray Dec. Ex. A.
[22] Davies Dec. ¶ 25.

In the Opinion, the Bankruptcy Court held that:  (1) Appellants had submitted to the jurisdiction of the Court by filing the Proofs of Claim, the subject of which was the "very subject" of the Proceedings; (2) Appellants' participation against the Debtors in such Proceedings is subject to the automatic stay under Section 362(a) of the Bankruptcy Code; and (3) under the applicable "pecuniary purpose" and "public policy" tests, and controlling case law, the police power exception to the automatic stay does not apply, because the Proceedings do not involve a matter of public health, safety or welfare, but are intended to "address an alleged financial shortfall in a private pension plan," and "to obtain financial support for the benefit of private parties."

**Parties' Contentions**

Appellants contend that the Bankruptcy Court erred in concluding that the Proceedings were not commenced by a foreign governmental agency.  Specifically, Appellants argue that the Proceedings were an exercise of the agency's regulatory/police power within the meaning of the exception to the automatic stay contained in section 362(b)(4) of the Bankruptcy Code.  Appellants also point out that the Bankruptcy Court erred in concluding that the prejudice the Debtors might suffer as a result of the Proceedings did not provide a basis for the conclusion that the automatic stay applies to the Appellants and bar them from participating therein with respect to the Debtors.

In response, the Debtors contend that the Bankruptcy Court correctly found that allowing Appellants to participate in the Proceedings would violate the automatic stay, and the Proceedings do not constitute the exercise of the "police power" that would except them from the stay.

## II. STANDARD OF REVIEW

The court has jurisdiction to hear an appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a).  In undertaking a review of the issues on appeal, the court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions.[23]  With mixed questions of law and fact, the court must accept the Bankruptcy Court's finding of "historical or narrative facts unless clearly erroneous, but exercise[s] plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts."[24]  The appellate responsibilities of the court are further understood by the jurisdiction exercised by the Third Circuit, which reviews the Bankruptcy Court decision on *de novo* basis in the first instance.[25]

In cases regarding the denial of relief from the automatic stay and denial of reconsideration, the Bankruptcy Court's decisions are reviewed under the abuse of discretion standard.[26]  An abuse of discretion exists when judicial action "'rests upon a clearly erroneous finding of fact, and errant conclusion of law or an improper application of law to fact.'"[27]  A court abuses its discretion when it bases a decision upon an

---

[23] *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999).
[24] *Mellon Bank., N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (citing *Universal Mineral, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101-02 (3d Cir. 1981)) (internal quotations omitted).
[25] *In re Telegroup*, 281 F.3d 133, 136 (3d Cir. 2002).
[26] *Baldino v. Wilson*, 116 F.3d 87, 89 (3d Cir. 1997) (automatic stay); *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 673 (3d Cir. 1999) (reconsideration).
[27] *NLRB v. Frazier*, 966 F.2d 812, 815 (3d Cir. 1992) (quoting *International Union, UAW v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir. 1987)); *In re FRG*, 115 B.R. 72, 73 (E.D. Pa. 1990) (holding that an abuse of discretion exists whenever a judicial action is "arbitrary, fanciful, or unreasonable, or when improper standards, criteria, or procedures are used") (internal quotations omitted).

erroneous legal conclusion, which itself is reviewed *de novo*.[28]  A court's decision should not be overturned based upon an abuse of discretion "unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant facts."[29]  Thus, a decision should not be overturned under the abuse of discretion standard, unless "no reasonable person would adopt the [lower] court's view."[30]

## III.  DISCUSSION

### A.  Interpretation of Section 362(b)(4)

Reviewing the decision of the Bankruptcy Court in light of the parties' arguments and the applicable standard of review, the court concludes that the Bankruptcy Court did not err in its decision to deny Appellants relief from the automatic stay.  The Bankruptcy Court thoroughly analyzed the law governing the automatic stay exception of Section 362(b)(4) of the Bankruptcy Code, and in the court's view, correctly concluded that:  (1) the police power exception is to be narrowly construed; (2) the Proceedings do not pass the pecuniary purpose or public policy test which would exempt them from the stay; and (3) the Bankruptcy Court did not impermissibly base its decision on the issue of prejudice.

### B.  Interpretation of regulatory power

Appellants contend that the Bankruptcy Court erred by interpreting the regulatory power exception to the automatic stay in too narrow a manner.  In support, they point to

---

[28] *Hanover Potato Prods. v. Shalala*, 989 F.2d 123, 127 (3d Cir. 1993) (holding that the use of an improper legal standard or procedure gives rise to an automatic abuse of discretion "which is merely another way of saying that our review becomes plenary").

[29] *Id.*

[30] *Id.* (alteration in original).

the Third Circuit's decision in *Penn Terra Ltd. v. Pa. Dep't of Envtl. Res.,* which requires

that the regulatory power exception be construed broadly.[31]   While it is true that the

Third Circuit holds that the regulatory power exception requires a broad interpretation,

this discussion was not in the context of the police powers with regard to foreign

entities.  As Debtors correctly point out, the regulatory exception should be construed

broadly "in the context of federal-state preemption."[32]   The Third Circuit states,

> [W]e find that the exception to the automatic stay provision
> . . . should itself be construed broadly, and no unnatural
> efforts be made to limit its scope.  The police power of the
> several States embodies the main bulwark of protection by
> which they carry out their responsibilities to the *People*; its
> abrogation is therefore a serious matter.  Congress should
> not be assumed, therefore, to have been miserly in its refund
> of that power to the *States*.[33]

The Bankruptcy Court was correct in its determination that the police powers exception

should be interpreted narrowly with regard to foreign entities.

Appellants further assert that a broad interpretation of the regulatory exception

should be applied to a foreign power, allowing the Proceedings to be exempted from the

automatic stay, citing *Gen. Elec. Co. v. Deutz AG*.[34]   There the Third Circuit states, "[i]n

parallel litigation, the issue of comity is an important and omnipresent factor.  Although it

is a consideration in federal and state litigation, it assumes even more significance in

international proceedings."[35]   While comity is an important consideration, it is also used

---

[31]  733 F.2d 267, 273 (3d Cir. 1984).
[32]  D.I 42 at 5 (emphasis in original).
[33]  *Penn Terra Ltd.*, 733 F.2d at 273 (emphasis added).
[34]  270 F.3d 144 (3d Cir. 2001).
[35]  *Id.* at 160.  The Third Circuit goes on to define comity.  "The Supreme Court has described comity as 'the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.'" *Id.* (quoting *Hilton v. Guyot*, 159

at the discretion of the Bankruptcy Court.  Comity, in the legal sense, is neither a matter

of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the

other.[36]  Because the Third Circuit has not decided a case involving comity superceding

an automatic stay, the Bankruptcy Court did not abuse its discretion in rejecting

Appellants' comity argument.[37]

Appellants next claim that the Bankruptcy Court's determination that TPR's

issuance of FSDs in the Proceedings did not constitute an exercise of its regulatory

powers within the meaning of Section 362(b)(4) was erroneous.[38]  In support, they point

to the Bankruptcy Court's decision *In re Sea Containers Ltd.*  In that case, the

Bankruptcy Court held that "the mere issuance of the FSDs did not violate the automatic

stay" because TPR is "a statutorily created entity endeavoring to exercise its regulatory

power."[39]

Appellants once again rely on a broad interpretation of the regulatory power

exception, thus allowing the Proceedings to be exempted from the automatic stay.  As

previously stated, this court agrees with the Bankruptcy Court findings that,

> An exercise of a governmental unit's police or regulator
> power exempts them from the automatic stay pursuant to
> Section 362(b)(4) of the Bankruptcy Code.  Here, neither of
> the Claimants is a "governmental unit," as defined in Section
> 101(27) of the Bankruptcy Code.  The Trustee is a private

---

U.S. 113, 164 (1895)).

[36] *Hilton,*159 U.S. at 163-64.

[37]  The three cases cited by Appellants were *Stonington Partners, Inc. v. Lernout & Hauspie Speech Prods, N.V.*, 310 F.3d 118, 129 (3d Cir. 2002), *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 160 (3d Cir. 2001), and *Compagnie des Braxuites de Guinea v. Ins. Co. of N. Am.,* 651 F.2d 877 (3d Cir. 1981) *affd*, 456 U.S. 694 (1982).  *General Electric* and *Compagnie des Bauxites* are not bankruptcy cases, and *Stonington* involved conflicts of law resulting from the debtor's decision to file bankruptcy in two jurisdictions.

[38]  D.I. 39 at 13.

[39]  No. 06-11156 (KJC), 2008 WL 4296562, at *9 (Bankr. D. Del. Sept. 19, 2008).

> party, and the PPF, while defined as "a statutory body" in
> paragraph 1.4 of the U.K. Pension Claim, during an
> assessment period exercises the rights and powers of the
> Trustee.  PPF thus stands in the shoes of the Trustee, a
> private party.[40]

In addition, the Bankruptcy Court points out that *Sea Containers* is distinguished from the case at issue because:  (1) *Sea Containers* involved a motion to approve a settlement based on Bankruptcy Rule 9019, and a different set of facts; (2) there was no objection to the FSD preceding in *Sea Containers*; (3) there was no move to enforce the automatic stay; (4) neither the *Sea Containers* debtors nor the creditors who later objected to the FSD proceedings moved to enforce the automatic stay; (5) the trustees in *Sea Containers* did not file a proof of claim in the debtors' Chapter 11 proceedings until after the FSD proceeding took place and therefore was not subject to the jurisdiction of the bankruptcy court, and; (6) here, TPR is asserting a contingent claim, whereas in *Sea Containers*, integral to the court's ruling that there was no stay violation was its determination that there was no assertion of a claim.  In sum, the court agrees with and adopts the rationale and conclusions of the Bankruptcy Court.

### C.  Pecuniary Purpose Test

The Bankruptcy Court correctly identified and analyzed the two tests that are used to consider whether a Section 362(b)(4) exception applies.  First is the pecuniary purpose test, which determines if "the governmental action or proceeding relates primarily to the protection of the government's pecuniary or financial interest in the debtor's property, as opposed to a matter of public safety or welfare."[41]  The Bankruptcy

---

[40] *In re Nortel Networks Corp.*, 426 B.R. at 91.
[41] *Id.*

Court found that the purpose of the U.K. Proceedings is to

> [A]ddress an alleged financial shortfall in a private pension plan, first by determining whether the Targets should provide financial support to the Trustee, and, then potentially by imposing and fixing a claim against NNI and NN CALA through a CN. This is purely an issue of determining which, if any, entities, on an after-the-fact basis, should be financially responsible for funding a pension shortfall. It is clearly a pecuniary matter, and, notwithstanding the importance of the financial matter to the private Trustee, under the case law does not qualify as a matter of public safety or welfare.[42]

Appellants maintain that TPR is acting in furtherance of its statutory objective, which includes ensuring that pension plans in the U.K. are properly funded and maintained by their sponsors and remedying the moral hazard created by employers who seek to evade their pension obligations and pass off the burden or their liabilities to the PPF.  The Bankruptcy Court disagreed with this characterization, and found that TPR is a forum for disputes in U.K. proceedings, where private parties are seeking to protect their property rights.  This court agrees with that characterization and finds that the requirements of the pecuniary purpose test have not been met.  The Proceedings do not address whether there has been a violation of law or public safety, but instead only seek to determine whether and how much the parties should contribute to the Pension Plan.[43]

Appellants further suggest that the Proceedings should be viewed in a similar light to that of the Equal Employment Opportunity Commission ("EEOC") since the EEOC is not barred by an automatic stay despite the fact that private individuals may

---

[42] *Id.* at 91-92.
[43] Hitchcock Dec. ¶ 39, A-2.

receive a pecuniary benefit as a result of its findings.  This argument is baseless, as the Bankruptcy Court points out that in *EEOC v. McLean Trucking Co.,* the Fourth Circuit "rejected the bankruptcy court's finding that because the debtor was in liquidation, the subject litigation was merely an action to recover back wages, an adjudication of private rights."[44]  To summarize, this court agrees that Appellants have not demonstrated that the Proceedings meets the pecuniary policy exception to the automatic stay.

### D. Public Policy Test

The Bankruptcy Court correctly found that the Proceedings also failed to meet the public policy test exception for the automatic stay.  Under this test, the issue is "whether the governmental action is taken in furtherance of a matter of public policy, or instead is intended primarily to adjudicate private rights."[45]  Appellants argument that the Proceeding was initiated and controlled by a governmental agency is unpersuasive.  As the Bankruptcy Court points out,

> Here, TPR seeks not to protect the "safety or welfare" of the public in the U.K., but rather to obtain financial support for the benefit of private parties-the members of the NNUK Pension Plan, represented by the Trustee-and if that fails, to assert and liquidate a claim to the property of the Debtors, on the Trustee's behalf.  Any sum paid as a result of the U.K. Proceedings would not go to benefit the public, but would be used to reduce the debt owed by NNUK to the Trustee.  The Trustee as intended beneficiary, and PPF, filed the proofs of claim to recover from the Debtors the same financial support that is the subject of the U.K. Proceedings.

Because TPR is acting on behalf of the members of the NNUK, who are private parties,

---

[44] *In re Nortel Networks Corp.*, 426 B.R. at 92 (citing *EEOC v. McLean Trucking Co.*, 834 F.2d 398, 400 (4th Cir. 1987)).
[45] *Id.* at 93 (citing *In re Fairchild Corp.*, No. 09-10899 CSS, 2009 WL 4546581, at *4 (Bankr. D. Del. Dec. 1, 2009).

the U.K. Proceedings do not pass the public policy test.

### E. Prejudice

Appellants' final argument is that the Bankruptcy Court "placed significant emphasis" on the issue of prejudice in determining whether to enforce the automatic stay, and thus committed a reversible error.  This court does not agree.  While the Bankruptcy Court did discuss the issue of prejudice, it did not include it in its decision to enforce the stay.  The Bankruptcy Court properly based its decision on the pecuniary and public policy tests.  Prejudice was discussed after the decision to enforce the stay was made in response to Appellants argument in their Objection to Debtor's Motion for Stay.  Because of this, it was proper for the Bankruptcy Court to discuss this issue after a decision was reached.

### ORDER AND RECOMMENDED DISPOSITION

For the reasons contained herein, I recommend that:

(1) The April 30, 2010 decision of the Bankruptcy Court be AFFIRMED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.Del.LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.[46]  The objections and response to those objections are limited to ten (10) pages each.

The parties are directed to the court's standing Order in Non-Pro Se Matters for Objections Filed under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is

---

[46] FED. R. CIV. P. 72(b).

available on the court's website, www.ded.uscourts.gov.

Dated: August 5, 2010                            _____/s/ Mary Pat Thynge_____
                                                         UNITED STATES MAGISTRATE JUDGE